**ORIGINAL**

| | | |
|---|---|---|
| **RICHARD E. TUCKER** | * | NUMBER: CV303-010  DIVISION: |
| | * | |
| | * | UNITED STATES DISTRICT COURT |
| | * | |
| **VERSUS** | * | SOUTHERN DISTRICT OF GEORGIA |
| | * | |
| **MORRIS STATE BANK, ET AL** | * | STATE OF GEORGIA |

## COMPLAINT

The Complaint of Richard E Tucker a resident of and domiciled in East Baton Rouge Parish, State of Louisiana, respectfully represents.

1

Jurisdiction is founded herein pursuant to 18 U S C §1964 (a), (b), (c) and (d) (Racketeer Influenced and Concept Organizations). Federal question jurisdiction is founded on 28 U S C §1337 (commerce) Supplemental jurisdiction is founded on 28 U S C §1367

2

Venue is proper in Judicial District under 18 U S C § 1391 (b)

3

Made defendant herein are

Morris State Bank, a bank chartered by the State of Georgia, Incorporated in the State of Georgia and doing business in the state of Georgia,

and

Louie Livingston, Chairman/Director; a resident of and domiciled in the State of Georgia,

1

Donald C Crafton, Vice Chairman/Director, a resident of and domiciled in the State of Georgia,

R Jeffery Cannon, President, CFO (Loans), a resident of and domiciled in the State of Georgia,

Milton E Tyson, Executive Vice President, a resident of and domiciled in the State of Georgia,

Charles M Harwell, Vice President, a resident of and domiciled in the State of Georgia,

Starlette M Singard, Vice President, a resident of and domiciled in the State of Georgia,

Rita M Watson, Vice President, a resident of and domiciled in the State of Georgia,

Susan C. Brandon, Associate Vice President, a resident of and domiciled in the State of Georgia,

Gail Rogers, Associate Vice President, a resident of and domiciled in the State of Georgia,

Delma P Wood, Associate Vice President, a resident of and domiciled in the State of Georgia,

Brian K Bazemore, Susan Carr, Nyland Henson, Lynn Judemont, F. Scott Beasley, Lisa L Black, O.D Cullen, III, James V Hilburn, and Robert J Walker  Each of the above listed individuals were officers, directors and employees of Morris State Bank at the time of the occurrences described below and worked together and in concert to deprive the plaintiff of his Constitutional Rights  All are residents of the State of Georgia

4

At all times mentioned herein Charles "Chuck" Harwell was the Vice President of Loans in Morris State Bank

5

On or before April 1994 Richard E Tucker opened two accounts in Morris State Bank

2

A) Richard E Tucker Farm Account, Account Number 581216

B) Richard E Tucker (personal checking account) Account Number 578894

6

On October 28, 1994, plaintiff purchased a 1994 Toyota Pickup truck for the price of nineteen thousand two hundred thirty one and no/100 dollars

7

On October 28, 1994, plaintiff executed a collateral mortgage on the said Toyota truck for seventeen thousand and no/100 dollars payable to Morris State Bank

8

At the time the mortgage was instituted the Morris State Bank required the plaintiff to secure Life Insurance and Disability Insurance at a cost of one thousand seven hundred forty four and 77/100 dollars

9

In the latter part of December 1994 or the first week of January 1995, plaintiff was injured and as a result of his injury was disabled for a period of four months  The disability insurance required by the Morris State Bank should have made monthly payments on his accounts due Morris State Bank for the four month period of his disability

10

At this time, plaintiff had four outstanding loans, the payments of each loan were current as of June and July of 1995, as the plaintiff had made the payments from his personal funds

3

11

The Morris State Bank was aware of the Disability Insurance and was aware that the four months in disability insurance payments were to be paid directly to the Bank which would have the outstanding loans paid through September 1995

12

The bank officers, Jeffery Cannon, Charles M Harwell and Don Clifton assured the plaintiff that upon receipt from the insurance company, the funds would be applied to his respective loans.

13

On July 27 and 28, 1995, plaintiff went to the Morris State Bank to discuss the status of his loans, which were all current, and to inform the Bank officials that he was going to work in Louisiana

14

Prior to this date plaintiff had a history of out of state employment, as a matter of fact, he had never worked in the State of Georgia since he began his banking relationship with Morris State Bank

15

The following Sunday, July 30, 1995, plaintiff left Georgia to work in Louisiana

16

After he arrived in Louisiana, plaintiff was contacted by "Chuck" Harwell who informed him that a warrant would be issued for his arrest and the bank was foreclosing on all loans Upon receipt of these threats, plaintiff contacted Don Clifton and his response was that Harwell's actions were proper and they were going to proceed

17

At the time he informed the Bank of his mailing address in Louisiana, the Bank had his telephone number and pager number

18.

Plaintiff was informed at a much later date that when he departed the Morris State Bank had immediately foreclosed on all of his pending loan accounts, seized all of the mortgaged assets and sold the same within thirty days of his departure   This was done without due process and deprived the plaintiff of his Constitutional rights

19

On or about August 25, 1995, Charles "Chuck" Harwell reported the Toyota truck stolen and had a warrant issued for plaintiff's arrest

20

Plaintiff was never served nor notified in any manner of any of the seizures, any pending Litigations, or the sale of any of his Georgia assets

21

The Morris State Bank, acting through its agents contacted C N L Insurance of America and made a claim for the truck  The Bank was paid the sum of sixteen thousand two hundred fifty and no/100 by C N L Insurance Company of America, Inc. on March 18, 1996

22

During this period of time, C N L Insurance Company of America contacted plaintiff and informed him of the claim by Morris State Bank and advised him they were going to pay the claim

23

In an effort to resolve this matter plaintiff told C N L Insurance Company of America that he would reimburse them for the money they paid, but, he wanted a title free and clear of any encumbrances  On July 25, 1996, plaintiff made paid C N L Insurance Company of America the amount the claimant was due and received a title to the truck free and clear of encumbrances  AT THIS TIME PLAINTIFF THOUGHT THE MATTER WAS RESOLVED

24

Plaintiff avers that during this same period of time the officials of Morris State Bank coerced his wife Sharon into filing a divorce, to divorce the plaintiff and had her execute a check on his account signing the name of Richard E. Tucker, knowing the check would not clear  This was done to incriminate the plaintiff  The plaintiff was not notified of the divorce or the check

25

During the year of 1997 funds in excess of $23,200 00 were wired to Morris State Bank to be deposited to the account of Sharon Tucker, plaintiff avers these funds were diverted from the account of Sharon Tucker and were used to pay on loans the Bank claimed were past due This was done without notifying plaintiff again depriving him of any due process

26

During this same period of time commencing in August of 1995 "Chuck" Harwell called plaintiff employer and made untrue statements in an attempt to have the employer terminate Plaintiff's employment Said statements were on invasion of Plaintiffs privacy

27

In 1997, Charles "Chuck" Harwell called KTI FISH in Brandon, Manitoba, Canada, where plaintiff was the project construction manager, and told the company various untrue statements in an attempt to cause plaintiff damage The call caused plaintiff to lose his position and not to be considered for future employment This caused plaintiff considerable loss

28

In 1997, plaintiff was contacted by mail from Charles "Chuck" Harwell and advised that there were monies due the Bank on the truck Plaintiff explained that there were no monies due, that he had in fact paid full amount of the insurance claim and received a loan free title on the truck Plaintiff was informed that this made no difference, the Bank wanted the truck returned

At this time, plaintiff had done all he could do and realized this was a civil matter and waited for the Bank to take whatever action they deemed necessary

29

Subsequent to this date, Charles "Chuck" Harwell began to contact third parties and conveyed information that plaintiff was a vagrant, operated under aliases, and other derogatory remarks with the intent to injure the plaintiff  These statements constituted defamation and slander

30

In 1999, plaintiff returned to Louisiana to attempt to resolve the damages caused by the slanderous and defamatory remarks made by Charles "Chuck" Harwell  Upon his return, plaintiff received information that his wife, Sharon had divorced him in February 1996, at the suggestion of certain Bank officials, because he was in default on his loans and this would allow the Bank to divert money plaintiff was to be sending Sharon for payment to loans claimed were in default

31

In 1999, plaintiff returned to his Louisiana address in Zachary, Louisiana and was contacted by the Bank

32

When plaintiff received the correspondence, he contacted the Bank and Charles "Chuck" Harwell informed him the Bank wanted his truck

33

In July 2002, the plaintiff was arrested by United States Federal Marshalls on charges filed by Charles "Chuck" Harwell alleging the felony theft and flight to avoid prosecution

34

At the time of arrest plaintiff called Charles "Chuck" Harwell and asked why they were pursuing this matter, the Bank was paid and the insurance company was paid and he had title to the truck. The response was that "you are a thief, you have been in jail most of your life, there is nothing you can do to the bank"

35

Upon his arrest, plaintiff was held in the East Baton Rouge Parish Prison on a detainer from the State of Georgia

36

Plaintiff, through his agents, contacted the Morris State Bank and was informed that Charles "Chuck" Harwell brought the charges and the Bank wanted plaintiff held in Jail to await extradition to Georgia or he could pay the amount the Bank claimed was due on the truck

37

Plaintiff was placed in a position of paying an illegal claim or being extradited to Georgia  This deprived the plaintiff of his Constitutional Right of Due Process and his 8th Amendment Rights as he is a diabetic and was deprived of all medications during his incarceration

38

Plaintiff became aware July 2002 that Morris State Bank deliberately misled authorities in Louisiana causing criminal charges to be filed against the plaintiff on a different warrant from 1995, plaintiff was not aware the charges were pending, he was incarcerated July 17,2002

9

39

Plaintiff received information in 2002 that defendants obtained mail from the United States Post Office belonging to the plaintiff illegally and distributed said materials to people in Louisiana and Canada during the period of 1995 through 1997

40

As a result of the actions by the bank and other defendants, Plaintiff has suffered the following losses.

| | | |
|---|---|---|
| a | Foreclosure and loss of property in Georgia | $ 36,000 00 |
| b | Coercing his wife into a divorce and diverting funds from his accounts | $ 160,000 00 |
| c | Deliberately forging a check on his account | $ 50,000 00 |
| d | Slander and defamation with employers BE & K Construction | $ 125,000 00 |
| e | Slander and defamation with employer KTI FISH in Brandon, Manitoba, Canada   Loss of past and future Employment | $ 1,200,000 00 |
| f | Slander and defamation with other third parties | $ 500,000 00 |
| g | Arrest on false warrant and extortion of funds | $ 150,000 00 |
| h | Deliberately misleading authorities on other Criminal charges that have caused Plaintiff embarrassment and mental anguish | $ 50,000 00 |

41

Plaintiff avers that the defendants are liable for the above listed damages in the amount of

$2,271,000 00 and that under the penalty section of the RICO Act he is entitled to three times total loss, plus punitive damages up to the limit allowed by law

42

Plaintiff alleges that the damages he has suffered were proximately caused by the defendants acting in concert

43

Plaintiff alleges that there are other parties who were treated as the plaintiff was treated and whose accounts were handled in a similar manner all of which are a violation of RICO

**WHEREFORE,** plaintiff prays that.

1) Defendants be served with a copy of this Complaint, and,

2) After due proceedings there be judgment herein in favor of Plaintiff and against defendants for all general damages, special damages, emotional distress, mental anguish, embarrassment, humiliation, statutory damages, putative damages and other special damages the court may award plus all expert witness fees, cost and any other general or equitable relief that may be just and proper

3) Plaintiff request trial by jury

*/s/ Richard Tucker*

In Proper Person
Richard E Tucker
8810 Zachary Deerford Rd
Zachary, Louisiana 70791

| | | |
|---|---|---|
| **RICHARD E. TUCKER** | * | NUMBER: _____ DIVISION: |
| | * | |
| | * | **UNITED STATES DISTRICT COURT** |
| | * | |
| **VERSUS** | * | **SOUTHERN DISRICT OF GEORGIA** |
| | * | |
| **MORRIS STATE BANK, ET AL** | * | **STATE OF GEORGIA** |

**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**

## AFFIDAVIT

**BEFORE ME**, Notary, personally came and appeared

*/s/ Richard E. Tucker*

**RICHARD E. TUCKER**

Who, after being duly sworn did depose and say that allegations contained in the foregoing Petition are true and correct to the best of his knowledge, information and belief

Signed this __25th__ day of __January__, 2003, at Zachary, Louisiana

_____
**Notary**

**My Commission expires at Death**